Astley v. Capron.

No. 10,082.

ASTLEY v. CAPRON.

EXECUTION.—*Exemption.*—*Schedule and Affidavit.*—In the absence of the execution defendant, the affidavit of his wife claiming exemption of property from execution under the act of 1861 (Acts 1861, p. 119), her affidavit for that purpose, verifying the schedule, showing that the schedule contains " a full and true account of all * * * property" of her husband "and held by him at the date of the issuing of the execution," is sufficient without the words " or in which he then had any interest."

SAME.—*Statute Construed.*—Statutes exempting property from execution are to be liberally and reasonably construed.

SAME.—*Replevin.*—*Evidence.*—*Instruction.*—Where a schedule and affidavit, made to claim property exempt from execution, showed some chattels sold after the execution issued, but did not account for the proceeds thereof, it is not error to instruct the jury in an action of replevin by the execution defendant against the sheriff, for the goods seized, that if it was shown by the evidence that the goods sold and not sold did not exceed $300 in value, that would be a sufficient accounting for the proceeds of the goods sold.

SAME.—*Evidence.*—In replevin against the sheriff for goods levied on by execution, claimed as exempt, the schedule and affidavit made by the wife of an absent debtor and presented to the sheriff, with a demand for exemption pursuant to the statute, are admissible in evidence.

SAME.—*Householder.*— *Housekeeper.*— *Statute Construed.*—A householder, in the sense of the statute exempting property from execution, is not necessarily a housekeeper; it is sufficient if he be the head of a family to whose support he contributes.

RESIDENCE.—*Presumption.*—Where residence is shown in this State for a number of years, it will be presumed to continue unless the opposite party show that it has been lost; and it is not lost by going to another State and engaging in business there with the intention *ultimately* of residing there.

PRACTICE.—*Interrogatories.*—*New Trial.*—Error of the court in refusing to require specific answers to interrogatories sent to the jury is only available as a cause for a new trial.

SAME.—*Supreme Court.*—Where the record does not show that interrogatories have been sent to the jury in the manner contemplated by the statute, R. S. 1881, section 546, no question upon a refusal to require more specific answers thereto will be considered by the Supreme Court.

SAME.—*Instructions.*—An instruction to the jury which is correct as far as it goes, but not full enough, can not be questioned in the Supreme Court, unless the lower court has refused, on request, to give a fuller one on the subject.

SAME.—*Evidence.*—If the plaintiff fail to prove some essential fact, and the defendant supplies the omission, it is sufficient.

SAME.—*Instruction.*—An instruction which assumes a fact which is conclusively shown by the evidence is not objectionable therefor.

From the Marshall Circuit Court.

*J. S. Bender, H. Corbin, J. D. McClaren* and —— *Parks,* for appellant.

*M. A. O. Packard* and *A. C. Capron,* for appellee.

BICKNELL, C. C.—The appellant, as sheriff of Marshall county, had taken certain personal property of the appellee, by virtue of an execution against him. This was an action of replevin to recover the property. The complaint averred that the plaintiff was a resident householder of Marshall county, and that when the goods were taken the plaintiff was temporarily absent from the State, but that his wife was residing at his house and claimed the goods as exempt from execution, and tendered to the defendant an inventory and schedule pursuant to the statute, together with her affidavit, and notified him of her choice of an appraiser, and demanded the property, and requested him to appoint an appraiser, but he refused to do so and refused to give up the property; that she then selected two appraisers and demanded of the defendant that said property to the amount of $300 should be appraised and set off to the plaintiff; all of which the defendant refused, and unlawfully kept possession of the property, etc. The complaint demanded a return of the property and damages for its detention.

The complaint was verified by the affidavit of A. C. Capron, the plaintiff's attorney. Annexed to the complaint were a copy of the inventory and schedule, and a copy of the affidavit made by the plaintiff's wife, which was as follows:

"Lucy M. Capron, being duly sworn, upon her oath says that she is the wife of Adolphus B. Capron, who is a resident householder of Marshall county, in the State of Indiana; that said Adolphus B. Capron is temporarily absent from the State on business, and is not expected to return until about July,

1879, and that she is herself a resident of said county, and she says, in behalf of herself and her said husband, that the above and foregoing list, inventory and schedule contain a full and true account of all the real estate within or without this State, rights, credits and choses in action, money on hand or on deposit within or without this State, and all personal property of every description whatever, belonging to said Adolphus B. Capron and held by him at the date of the issuing of the execution in this case, and that before she had notice that the same had been issued, she sold and delivered the following property, to wit: 1 lounge, 6 cane-seat chairs, 1 rocking-chair, 25 yards old carpet; the same being the items in the schedule marked ' B.' She therefore claims that $300 worth of said personal property be set off to her for her said husband as exempt from sale on said execution."

An affidavit in replevin in the common form having been made by Albertus C. Capron, the plaintiff's attorney, a writ of replevin was issued, under which, the plaintiff having given bond, the property was delivered to the plaintiff, its aggregate value being $277.

There was no demurrer to the complaint, but after a verdict for the plaintiff the defendant appealed, and assigned for error, with other causes, that the complaint did not state facts sufficient to constitute a cause of action, and that the court erred in overruling his motion in arrest of judgment. The sufficiency of the complaint, therefore, is the first question to be considered.

The only objection made to the complaint by the appellant in his brief is, that it fails to show that the property was exempt from execution, because the affidavit of the plaintiff's wife fails to contain the words " or in which he had any interest at the date of the issuing of the writ." The act of March 7th, 1857, 2 R. S. 1876, p. 352, provides that if an execution be issued against a man absent from home, his wife may exercise all the rights in relation thereto which would belong to him if he were present; and the act of 1861, 2 R.

S. 1876, p. 352, provides that before any person shall have exemption he shall make an inventory, etc., "of all of his or her real estate, within or without this State, money on hand or on deposit within or without this State, rights, credits and choses in action, and all personal property of every description whatever belonging to him or in which he had any interest at the date of the issuing of the writ, and make and subscribe an affidavit to the same that such inventory contains a full and true account of all such property as required in this act to be set out in the said inventory, had or held by him at the time such writ was issued." And this act further provides that where the defendant is absent from the State, his wife "may make out the schedule required in this act, and verify the same by her affidavit, and the said schedule, when so made and delivered to the officer holding the writ, shall entitle the wife to claim and hold for her husband the amount of property which by law is exempt from execution."

The complaint in this case shows a schedule made of real and personal property, and the affidavit of the wife states that it contains "a full and true account of all the real estate within or without this State, money on hand or on deposit within or without this State, rights, credits and choses in action, and all personal property of every description whatever belonging to said Adolphus B. Capron and held by him at the date of the issuing of the execution in this case."

These statutes of exemption are reasonably and liberally construed. *Kelley* v. *McFadden*, 80 Ind. 536, 538. And such an affidavit by a wife, in the absence of her husband, is a substantial compliance with section 2 of the act of 1861, *supra,* which declares that the wife may, when her husband is absent from the State, make the schedule and verify the same by her affidavit.

We think the complaint was sufficient, and that there was no error in overruling the motion in arrest of judgment.

The defendant answered the complaint in a single paragraph, admitting that he, as sheriff, took the property by vir-

tue of an execution as alleged in the complaint, and that the plaintiff at the time of the levy was absent from the State, but the answer averred that the plaintiff was not then a resident of the State, and that his wife had broken up housekeeping and was boxing and disposing of all said goods, intending to follow her husband; that the plaintiff was then in business as a lawyer at Leadville, in Colorado, and had disposed of all his business in Indiana, and had rented his house, which was mortgaged for its full value, and had dissolved and settled his partnership with his brother in Indiana, and that the plaintiff is now a resident of Leadville, Colorado, where his wife has gone to join him; that at the time of said levy, and at the time of said demand for exemption, and at the time this suit was brought, the plaintiff was not a resident householder and was not entitled to the possession of said property. The answer denied all the other allegations of the complaint and demanded a return of the property, etc.

The plaintiff replied in denial.

The issue was tried by a jury who returned the following verdict, interrogatories and answers:

"We, the jury, find for the plaintiff, that he is the owner of and entitled to the possession of the property described in the complaint; that the same was wrongfully detained by the defendant, and is of the value of $250, and we assess the damages of the plaintiff for the wrongful detention at one cent.

"INTERROGATORIES.

"No. 2. At the time the property was demanded as exempt from execution, and at the commencement of this suit, was A. B. Capron the keeper of a house, and occupant of a house in the State of Indiana? Ans. Yes.

"No. 3. At the time the property was claimed as exempt from execution, and at the commencement of this suit, was A. B. Capron the master and chief of a house and family, keeping house with them, in the State of Indiana? Ans. A. B. Capron was master and chief of a house and family keeping house, but absent at the time.

"No. 4. Was A. B. Capron, at the time of the issuing of the execution, and of the commencement of this suit, a resident of the State of Indiana? Ans. Yes.

"No. 5. When the plaintiff demanded of the sheriff to set off to him the property claimed in his complaint as exempt from execution, did he, or any one for him, accompany his demand with a schedule of all his property, rights, credits or choses in action, which he held or owned within or without this State, or which he had any interest in, and have attached to the same an affidavit that it contained a true, full and complete account of all such property, and show what property had been disposed of by him after the issuing of the writ of execution, and what disposition had been made of the proceeds? Ans. At the time the property was demanded by the sheriff, Mrs. A. B. Capron made a demand of 'set-off' which was refused at the time, and afterwards the schedule was presented to the sheriff, with affidavit attached, containing amount of all property disposed of after writ of execution, and the proceeds of all sales come to the hands of Mrs. A. B. Capron."

The record states that the defendant moved for an order that the jury retire and answer the interrogatories more specifically, which motion was overruled by the court. The defendant excepted and objected to the discharge of the jury without more specific answers to said interrogatories.

The second specification in the assignment of errors is as follows:

"2d. The court erred in overruling defendant's motion to remand the jury to their room and require said jury to answer more fully and specifically interrogatory No. 5, tendered to the court by the defendant, and submitted by the court to the jury to be answered in case of a general verdict."

The third specification in said assignment is:

"3d. The court erred in receiving the irresponsive and insufficient answer made by the jury to interrogatory No. 5, and thereupon discharging the jury over the defendant's objections."

These are not proper assignments of error; they belong to the reasons for a new trial, and the foregoing action of the court in reference to interrogatory No. 5, and also the alleged action of the court in refusing to submit to the jury interrogatory No. 1, propounded by the defendant, are among the reasons assigned for a new trial. But the bill of exceptions states nothing as to either of these interrogatories, and all that the record contains as to the interrogatories is the following statement, inserted by the clerk immediately after the verdict and immediately preceding interrogatories Nos. 2, 3, 4 and 5, as returned by the jury with their answers thereto, to wit: "If the jury shall find a general verdict for the plaintiff, then the defendant requires the jury to answer the following questions."

In the *Cleveland, etc., R. W. Co.* v. *Bowen*, 70 Ind. 478, the record, after copying the general verdict, was continued thus: "And said jury also return into open court their answers to the interrogatories propounded by the defendant herein, in these words," and then the interrogatories were inserted in their proper order, according to their numbers. After reciting the statute, 2 R. S. 1876, p. 171, section 336, this court said: "We are of the opinion, that in cases like this, where it is claimed that special interrogatories have been submitted to, and answered by, the jury, the record ought, in some way, to show affirmatively that the interrogatories were submitted to the jury in the manner, and under the circumstances, contemplated by the statute. If the courts were authorized, at their discretion, to submit interrogatories upon mere questions of fact, in all cases, we might be justified in assuming, where interrogatories have been answered and returned into court, that they had been properly submitted to the jury; but, however that might be, we think a stricter rule ought to be observed, where the authority of the courts in that respect is limited and special. It is to our minds quite evident, that the record of a cause ought not to be encumbered by, nor the attention of this court required to, interrogatories which are not shown to have been considered by the court and properly

sent to the jury." In the case just cited, as in the case at bar, there was nothing in the record to show that the interrogatories were ever in any manner considered by the court or by it submitted to the jury. The court further said : " Our conclusion is that those interrogatories are not in the record in such a way as to raise any question in this court upon them, or upon any of the answers to them." The case cited is exactly in point here, and it follows that no question arises here upon the said first and fifth interrogatories. The record does not show that there ever was any interrogatory No. 1, or any action of the court thereon.

Among the reasons assigned for a new trial as errors of law occurring at the trial were the giving to the jury instructions Nos. 3, 4, 5, 6 and 7, and the refusing to give the jury instructions Nos. 8 and 9, requested by the defendant.

That part of instruction No. 3, to which the appellant objects, is the following : " The affidavit attached to the inventory shows that certain articles therein named have been sold, but does not show what disposition was made of the proceeds, but the same articles are mentioned in the inventory and referred to by the affidavit as marked B, and evidence of the value of said articles has been given to the jury, and if the jury shall find from the evidence that the value of said articles, together with the value of the other property named in the inventory, does not exceed the sum of $300, then that would be a sufficient accounting of the proceeds of the articles sold, to comply with the law in that respect." There was no error in this instruction.

Instruction No. 4 was as follows :

" It is unnecessary that I should give you any particular instructions in regard to value. The evidence is before you, and if, in your judgment, you can determine from it the value of the property to a reasonable certainty, it is sufficient. All you have to do is to say what that value is."

The objection made to this instruction is that it was not full enough, and was likely to mislead the jury ; if it was not full

enough, the defendant ought to have requested a fuller instruction. The court had already told the jury that the value of the property must be established to a reasonable certainty by a preponderance of the evidence. There was nothing in the fourth instruction that had any tendency to mislead.

The fifth instruction was the following: "As to the nature of the debt to satisfy which the property was taken, the plaintiff introduced no evidence; but the judgment upon which the execution was issued has been read in evidence, and that shows that it was founded upon a contract. This evidence was introduced by the defendant, it is true, but the plaintiff is entitled to the benefit of it, as if he had introduced it himself." We think there was no substantial error in this instruction.

That part of the sixth instruction to which the appellant objects is the following: "But the residence of the plaintiff having been shown to be in Indiana for a number of years before he went to Colorado, it will be presumed to have continued in Indiana until it is shown that he acquired a residence elsewhere. The burthen of proof is, therefore, on the defendant to show that the plaintiff had acquired a residence elsewhere than in Indiana, before the commencement of this suit."

The objection to this urged by the appellant is that it required the defendant to prove a negative, and assumed that the residence of the plaintiff had been shown to be in Indiana for a number of years. It was not disputed that the plaintiff's residence had been in Indiana for a number of years. The court had told the jury that the plaintiff could not recover without showing by a preponderance of evidence that he was a resident of Indiana when the demand for exemption was made and when this suit was commenced. The evidence showed conclusively that the plaintiff's residence had been in Indiana, and the only question was whether he had lost that residence. We think there was no substantial error in instruction No. 6.

The seventh instruction given by the court is as follows: "As to what constitutes a householder within the meaning of

the statute, I instruct you that a householder is the father or head of a family whom he supports or assists in supporting. It is not necessary that the family should keep house in the ordinary sense of that term. The father, as head of a family, may put his family out to board and still be entitled to the benefit of the law. If the plaintiff, at the time of said demand for exemption, and after the bringing of this suit, was supporting his wife or aiding in her support, and was intending to continue to live with her and to return to Indiana to reside or remain permanently, or indefinitely, when his business in Colorado was terminated and finished, then he was a householder within "the meaning of that term in the statute providing for the exemption of property from sale on execution." The objection made to this instruction is that "it is imperfect and ambiguous and not sufficiently clear and full as a definition of the term householder," and this is all that appellant presents in his brief as to this instruction.

We think there was no substantial error in this instruction; it was applicable to the evidence, and its propositions are supported by the authorities. *Norman* v. *Bellman*, 16 Ind. 156; *Mark* v. *State, ex rel.*, 15 Ind. 98; *Kelley* v. *McFadden*, 80 Ind. 536. In *Bunnell* v. *Hay*, 73 Ind. 452, this court said: "It was the duty of the appellant to support the child which was his by adoption, and the case, therefore, falls within the rule, sanctioned by many authorities, that he is to be deemed a householder upon whom rests the duty of supporting the members of his family or household. Thompson Homesteads and Exemptions, secs. 45–46; Smyth Homestead and Exemptions, sec. 532."

Instruction No. 8, requested by the defendant and refused by the court, was as follows:

"8. In order to constitute a person a householder to entitle him to the benefit of the exemption law, it is necessary that he be the occupier of a house, a housekeeper, master of a house or family, the master or chief of a family, one who keeps house with his family, and in this case, unless you shall

find from the evidence that the plaintiff occupied, or stood in that relation as above defined, he is not entitled to the benefit conferred by the law upon resident householders, exempting property from sale on execution, and in such case you should find for the defendant."

There was no error in refusing this instruction. The claimant need not be at the time the actual occupier of a house. *Norman* v. *Bellman, supra.*

The ninth instruction requested by defendant, and refused by the court, is:

" 9. In order to constitute a person a resident, etc., it is necessary that he should be a *bona fide* resident of this State. So, in this case, if you should find from the evidence that the plaintiff, at the time of making the claim for exemption, had left the State of Indiana and gone to Colorado, and had engaged in business there with the intention of ultimately making that his residence, or staying for an indefinite time, without any fixed intention of returning to Indiana, and afterwards, before making the claim for exemption, had sent for his family to come to him, and they had broken up housekeeping, and were selling off their household goods preparatory to going to Colorado to join the plaintiff, or if you shall find that he so went to Colorado without any definite intention of staying, but with the intention of staying if he liked it, and before making the claim for exemption in this case had engaged in business and sent for his family to remove there and join him, with the purpose of staying for an indefinite time, and after this, while his wife was selling off his household goods preparatory to leaving, made the claim for an exemption, he is not a resident householder in the sense of that term, and in such case you should find for the defendant." There was no error in refusing this instruction.

It ought not to have been given as prayed. An original domicile remains until it is abandoned or a new one is acquired: A man who has a domicile in Indiana does not lose

it by going to Colorado and engaging in business there, nor by forming an intention that he will *ultimately* make that his residence; an intention to change residence at some future time is not a present change of residence. See *Culbertson* v. *Board, etc.*, 52 Ind. 361. This disposes of the objections in reference to the instructions.

Another reason alleged for a new trial is that the court erred in admitting in evidence the schedule and affidavit presented to the sheriff by the plaintiff's wife. There was no error in this. *Boesker* v. *Pickett*, 81 Ind. 554; *Kelley* v. *Mc-Fadden, supra.*

The remaining reasons alleged for a new trial are that the verdict was not sustained by sufficient evidence and was contrary to law. There was evidence tending to sustain the verdict; when that is the case this court will not disturb the verdict. *Frank* v. *Purkhiser*, 83 Ind. 496. The verdict was not contrary to law. There was no error in overruling the motion for a new trial. We have now considered all the errors properly assigned, and we find no substantial error in the record.

The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and it is, hereby in all things affirmed, at the costs of the appellant.